50 Cal.Rptr.3d 761 (2006)
144 Cal.App.4th 841
The PEOPLE, Plaintiff and Respondent,
v.
Alexander Nathan BAILIE, Defendant and Appellant.
No. C051476.
Court of Appeal of California, Third District.
November 8, 2006.
*762 Patricia L. Watkins, under appointment by the Court of Appeal, for Defendant and Appellant.
Karen Keating Jahr, County Counsel, and David A. Hamilton, Deputy County Counsel, for Plaintiff and Respondent.
Bill Lockyer, Attorney General, Thomas R. Yanger, Senior Assistant Attorney General, Joseph O. Egan, Supervising Deputy Attorney General, and Catherine H. Brown, Deputy Attorney General, for Department of Developmental Services as Amicus Curiae on behalf of Plaintiff and Respondent.
RAYE, J.
Following a contested hearing, the Shasta County Superior Court, sitting without a jury, found that defendant Alexander Nathan Bailie is a mentally retarded person who is a danger to himself and others. *763 (Welf. & Inst.Code, § 6500.)[1] Defendant was committed to the Department of Developmental Services (DDS) for one year.
On appeal, defendant contends reversal is required because (1) the trial court failed to advise him of his right to a jury trial or to secure his waiver of that right, and (2) the statutory scheme does not require, the petition did not allege, and the plaintiff (county counsel) did not prove that his mental retardation makes it seriously difficult for him to control his dangerous behavior. For the reasons that follow, we conclude both points have merit.

FACTUAL AND PROCEDURAL BACKGROUND
In September 2005, at the request of the Director of the Far Northern Regional Center (FNRC), the Shasta County Counsel filed a section 6500 petition for an order committing defendant to DDS for care and treatment. The petition alleged that defendant "is a mentally retarded person who is a danger to himself or others," as set forth in the affidavit of an FNRC service coordinator. The facts supporting the petition are not at issue and need not be set forth in this opinion.
On October 25, 2005, the parties appeared in court on the petition. According to the clerk's minutes, defendant's counsel "advise[d] the Court that [defendant] is not in agreement with the Petition and is requesting the Court hold a contested hearing." The minutes make no reference to a jury trial.
The reporter's transcript does not contain the foregoing request for a contested hearing. Nor does the transcript contain an advisement of the jury trial right or defendant's waiver of that right.
At the hearing, county counsel presented the testimony of psychologist Jan Freemon, FNRC service coordinator Cynthia Nordstrom, and therapist Russell York, Ph.D. The defense presented testimony from defendant's mother and from defendant.
At the conclusion of the hearing, the trial court found that defendant "is kind of a danger to himself and others." Defendant was committed to DDS until October 25, 2006.[2]

DISCUSSION

I
Defendant contends reversal is required because the trial court failed to advise him of his right to jury trial or to secure his waiver of that right. We agree.
In People v. Alvas (1990) 221 Cal.App.3d 1459, 271 Cal.Rptr. 131 (Alvas), the defendant claimed his section 6500 commitment had to be reversed because the record failed to "show an advisement and waiver of the right to a jury trial on the issues of dangerousness and retardation ...." (Alvas, at p. 1462, 271 Cal.Rptr. 131.) This court concluded the contention had to be sustained "pursuant to both the equal protection and the due process clauses of the federal and state Constitutions (U.S. *764 Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a)) and as a consequence this matter must be reversed and remanded for retrial." (Id. at p. 1463, 271 Cal.Rptr. 131.)
The equal protection violation was as follows: "Effective July 1, 1969, the Legislature enacted a sweeping revision of the mental health laws (§ 5000 et seq.), known as the Lanterman-Petris-Short Act (hereafter LPS Act). The LPS Act, which expressly excludes the mentally retarded (§ 5002), applies, inter aha, to those who as a result of mental disorder are a danger to themselves or others or are gravely disabled, and provides for 72-hour and 14day periods of detention for treatment and evaluation. (§§ 5150, 5170, 5200, 5225, and 5250.) If further detention is required, sections 5300, 5301, and 5304 provide the procedural mechanism for commitment and recommitment periods of 180 days each. With respect to these extended commitments, the trial court is statutorily required (§ 5302) to advise the defendant of his right to a jury trial on the allegations. No similar safeguard exists for those accused of being dangerously mentally retarded." (Alvas, supra, 221 Cal. App.3d at p. 1463, 271 Cal.Rptr. 131; italics added.) We held that "no compelling reason exists for the disparate treatment in involuntary commitments between the two classes by providing those alleged to come within the LPS Act with the procedural safeguard of advisement of the right to a jury trial while denying it to those defendants charged with dangerous mental retardation. We conclude that equal protection requires that a defendant in a section 6500 proceeding be advised of his right to a jury trial." (Id. at p. 1464, 271 Cal.Rptr. 131.)
After resolving the equal protection claim, Alvas stated that, "[although the parties have not so argued, we believe the same conclusion is compelled' under a due process analysis." (Alvas, supra, 221 Cal.App.3d at p. 1464, 271 Cal.Rptr. 131.) We explained: "The due process interest at stake is the defendant's personal liberty, a `"fundamental interest, second only to life itself ...."' [Citation.] In Duncan v. Louisiana (1968) 391 U.S. 145[, 88 S.Ct. 1444, 20 L.Ed.2d 491], it was held that in serious criminal cases, i.e., where the punishment was not less than six months and the offense otherwise qualified as petty, that liberty was such a fundamental interest that the Fourteenth Amendment's due process clause required that it be protected by the Sixth Amendment's guaranty of the right to a jury trial. [Citation.] In In re Gary W. [(1971) 5 Cal.3d 296, 96 Cal. Rptr. 1, 486 P.2d 1201], it was concluded that due process, as well as equal protection, required that in proceedings to extend the commitments of Youth Authority wards predicated upon their need for further treatment owing to their continuing dangerousness to the public due to mental or physical abnormalities (§ 1800), the wards were entitled to jury trials. In so holding, Gary W. observed that loss of liberty occasioned by involuntary confinement for treatment is not made less fundamental by virtue of its purpose, and that in extending the right to trial by jury to persons subject to civil commitment proceedings (§ 5303 of the LPS Act) the Legislature recognized that the interest involved was no less fundamental than that involved in criminal proceedings. [Citation.] [¶] Following the reasoning of the cited authority makes clear that the focus is on the resultant deprivation of liberty, rather than upon the procedural mechanism, be it designated civil or criminal, used in achieving that result. We think it is beyond dispute that the right to a jurytrial in adult involuntary commitment proceedings is a right of constitutional dimension. Where `a constitutional right exists, *765 it must be observed unless waived and ... a waiver implies, among other things, a knowledge that the right existed.' [Citations.] Consequently, a defendant proceeded against under section 6500 must be advised of his right to a jury trial." (Id. at pp. 1464-1465, 271 Cal.Rptr. 131 parallel citations omitted.)
The Shasta County Counsel requests that we revisit Alvas, based in part on the civil jury trial provisions of the California Constitution and statutes. Counsel notes that a Welfare and Institutions Code section 6500 commitment "must be deemed essentially civil in nature." (Cramer v. Tyars (1979) 23 Cal.3d 131, 137, 151 Cal. Rptr. 653, 588 P.2d 793.) Thus, article I, section 16 of our Constitution states that "[i]n a civil cause a jury may be waived by the consent of the parties expressed as prescribed by statute." Code of Civil Procedure section 631, subdivision (d)(4) provides that a jury may be waived "[b]y failing to announce that a jury is required, at the time the cause is first set for trial
County counsel's reliance on these provisions is misplaced. To the extent that Alvas's holding rests upon the federal equal protection clause, which proscribes the "disparate treatment in involuntary commitments between the two classes [LPS Act commitments and section 6500 commitments]," the minimum state standards for jury trial waiver in civil cases are not determinative. (Alvas, supra, 221 Cal. App.3d at p. 1464, 271 Cal.Rptr. 131.)
County counsel relies upon several cases in which the committed person's counsel expressly waived a jury trial. (People v. Masterson (1994) 8 Cal.4th 965, 974, 35 Cal.Rptr.2d 679, 884 P.2d 136 [proceeding to determine competency to stand trial]; People v. Montoya (2001) 86 Cal.App.4th 825, 828, 103 Cal.Rptr.2d 579 [mentally disordered offender proceeding]; Conservatorship of Maldonado (1985) 173 Cal. App.3d 144, 147, 218 Cal.Rptr. 796 [LPS Act proceeding].) These cases are not on point where, as here, there is no express waiver by defendant or by counsel. Moreover, none of those cases addressed a statutory provision, such as section 5302, that confers a statutory right to an advisement of the right to jury trial in certain cases, nor did those cases consider whether equal protection requires a similar advisement in a similar class of cases.
In People v. Rowell (2005) 133 Cal. App.4th 447, 34 Cal.Rptr.3d 843 (Rowell), the defendant cited Alvas and other authorities for the proposition that "the interests involved in civil commitment proceedings are no less fundamental than those in criminal proceedings, and that the defendant in a commitment proceeding `"is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings." `[Citation.]" (Id. at p. 453, 34 Cal.Rptr.3d 843.) This court responded that, "`[I]n recent years, courts have reevaluated the nature of civil commitment proceedings and the application of criminal procedural safeguards in those proceedings. This reevaluation has led to the conclusion that defendants in civil commitment proceedings, generally, are not constitutionally entitled to the procedural safeguards afforded to defendants in criminal trials.' [Citations.]" (Ibid)
It is not necessary to determine whether Rowell and its antecedents have undermined Alvas's due process analysis. Alvas `s equal protection analysis remains sound, inasmuch as the Legislature has not amended sections 5302 or 6500 to remedy the disparate treatment of jury trial advisements.
Citing People v. Howard (1992) 1 Cal.4th 1132, 5 Cal.Rptr.2d 268, 824 P.2d *766 1315, county counsel suggests that the failure to advise defendant of his jury trial right should not be reversible "if the record affirmatively shows that [the waiver of jury trial] is voluntary and intelligent under the totality of the circumstances." (Id. at p. 1175, 5 Cal.Rptr.2d 268, 824 P.2d 1315.) However, as we noted in Alvas, "`a waiver implies, among other things, a knowledge that the right existed.'" (Alvas, supra, 221 Cal.App.3d at p. 1465, 271 Cal.Rptr. 131.) The totality of present circumstances does not suggest defendant had knowledge that his jury trial right existed. Accordingly, the judgment must be reversed.

II
Defendant contends section 6500 violates due process because it does not require proof that a person's mental retardation causes him or her to have serious difficulty in controlling dangerous behavior. (See, e.g., In re Howard N. (2005) 35 Cal.4th 117, 24 Cal.Rptr.3d 866, 106 P.3d 305 (Howard N.).) We agree. Although defendant's commitment may have expired, and must be reversed in any event for lack of a jury trial advisement, we consider this issue for guidance in the event a further commitment is sought. We leave for another day the issue of how our ruling may apply to an extant section 6500 commitment.
Section 1800 et seq. provides a mechanism for the extended detention of dangerous persons. Specifically, it provides for the civil commitment of a person at the time he or she would otherwise be discharged from a Division of Juvenile Justice (formerly California Youth Authority) commitment. Howard N., supra, 35 Cal.4th 117, 24 Cal.Rptr.3d 866, 106 P.3d 305 considered whether this extended detention scheme violates due process because it does not expressly require a finding that the person's mental deficiency, disorder, or abnormality causes serious difficulty in controlling behavior. (Id. at p. 122, 24 Cal.Rptr.3d 866,106 P.3d 305.)
After analyzing federal and state decisional law concerning other civil commitment schemes such as those involving sexually violent predators and incompetent criminal defendants, Howard N. held that in order to preserve the constitutionality of section 1800 et seq., the "extended detention scheme should be interpreted to contain a requirement of serious difficulty in controlling dangerous behavior." (Howard N., supra, 35 Cal.4th at p. 132, 24 Cal.Rptr.3d 866, 106 P.3d 305.) This added requirement serves "to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control." (Id. at p. 128, 24 Cal.Rptr.3d 866, 106 P.3d 305; italics added.) Quoting Kansas v. Hendricks (1997) 521 U.S. 346, 360, 117 S.Ct. 2072, 138 L.Ed.2d 501 (Hendricks), Howard N. explained that a prediction of future dangerousness, coupled with evidence of lack of volitional control, adequately distinguishes between persons who are subject to civil commitment and "`other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings.'" (Howard N., supra, 35 Cal.4th at p. 129, 24 Cal. Rptr.3d 866,106 P.3d 305.)
In Howard N., the court noted that its prior decisions in People v. Williams (2003) 31 Cal.4th 757, 3 Cal.Rptr.3d 684, 74 P.3d 779 (Williams) and Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 81 Cal. Rptr.2d 492, 969 P.2d 584 (Hubbart) had described Hendricks, supra, 521 U.S. 346, 117 S.Ct. 2072 and Kansas v. Crane (2002) 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (Crane) as "embodying general due process principles regarding civil commitment." (Howard N., supra, 35 Cal.4th at *767 p. 131, 24 Cal.Rptr.3d 866, 106 P.3d 305; see Williams, supra, 31 Cal.4th at p. 759, 3 Cal.Rptr.3d 684, 74 P.3d 779; Hubbart, supra, 19 Cal.4th at p. 1156, 81 Cal. Rptr.2d 492, 969 P.2d 584.)
In People v. Galindo (2006) 142 Cal. App.4th 531, 48 Cal.Rptr.3d 241, we very recently concluded that those general due process principles apply to an extended commitment under Penal Code section 1026.5. We now conclude that those same principles apply to Welfare and Institutions Code section 6500 commitments as well.
County counsel relies on Quinn, supra, 86 Cal.App.4th 1290, 103 Cal.Rptr.2d 915, which was decided prior to Howard N., supra, 35 Cal.4th 117, 24 Cal.Rptr.3d 866, 106 P.3d 305 and Crane, supra, 534 U.S. 407, 122 S.Ct. 867, and which did not consider the due process analysis of Hendricks, supra, 521 U.S. 346, 117 S.Ct. 2072 and Hubbart, supra, 19 Cal.4th 1138, 81 Cal.Rptr.2d 492, 969 P.2d 584. In any event, nothing in Quinn suggests that the mentally retarded are entitled to lesser due process protections than other persons who are subjected to involuntary civil confinement.
Quinn addressed three issues, which we consider in turn. The defendant in Quinn contended "his commitment was unlawful because there was no proof that he was dangerous because of mental retardation. Section 6500 states `no mentally retarded person may be committed to the State Department of Developmental Services ... unless he or she is a danger to himself ... or others.' `"To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent." [Citation.]' [Citation.] [¶] The words of this statute contain no requirement that the dangerous condition be caused by mental retardation. `[S]ection 6500 singles out the mentally retarded ... and permits their involuntary confinement ... upon proof of mental retardation and dangerousness to self or others....' [Citation.] The causation Quinn seeks to add is not the language of the statute." (Quinn, supra, 86 Cal.App.4th at pp. 1293-1294, 103 Cal.Rptr.2d 915.) Quinn's interpretation of section 6500 is unassailable and provides the foundation for defendant's contention.
The court in Quinn next considered the defendant's contention that "the Legislature intended that some commitment statutes require proof of causation and section 6500 does not show the legislative intent not to require it for the mentally retarded. [Citation.]" (Quinn, supra, 86 Cal.App.4th at p. 1294, 103 Cal.Rptr.2d 915.)
Quinn rejected the contention, stating: "The Legislature recognized that the medical care for the retarded and attendant legal procedures differ from those for the mentally ill. [Citations.] [¶] To adopt Quinn's position would remove many of the mentally retarded from the protection of the statute. It would undermine the goal to assist all of these helpless people and expose some of them to death or serious danger. We conclude that the evidence that Quinn was dangerous and mentally retarded was, by itself, sufficient to authorize commitment under section 6500." (Quinn, supra, 86 Cal.App.4th at p. 1294, 103 Cal.Rptr.2d 915.)
But Howard N.'s due process requirements do not exclude from section 6500 the "helpless people" described by Quinn; rather, they exclude only those people who have no "serious difficulty in controlling" their "dangerous behavior," or in other words, those people whose dangerousness is within their own control. (Howard N., supra, 35 Cal.4th at p. 132, 24 Cal.Rptr.3d 866, 106 P.3d 305.) This ability to control *768 dangerous behavior distinguishes these people from those who are helpless.
Quinn lastly considered the defendant's contention that "the absence of a causational requirement in section 6500 violates his right to equal protection of the laws. His attempt to support this theory is based on differences between statutes involving the mentally ill and the retarded." (Quinn, supra, 86 Cal.App.4th at p. 1294, 103 Cal.Rptr.2d 915.)
Quinn also rejected this contention, explaining that "these two groups are not similarly situated and there is a rational basis for treating them differently. [Citation.] The legislative scheme recognized that medications and treatments for the mentally ill may not work for the mentally retarded. Section 6500 does not discriminate against the mentally retarded; it distinctly accommodates their unique condition. [Citation.] `These schemes are not unconstitutional on equal protection grounds because the classifications are based upon accepted factual and medical differences between the mentally retarded and mentally ill.' [Citation.] [¶] The Legislature rationally decided to provide special protection for the mentally retarded. Section 6500 furthers the state's compelling interest to protect all the retarded persons who are dangerous, and not just those whose violence is caused by retardation. This does not violate Quinn's right to equal protection of the laws." (Quinn, supra, 86 Cal.App.4th at pp. 1294-1295, 103 Cal.Rptr.2d 915.)
Thus, the foundation of Quinn's equal protection analysis is its observation that "medications and treatments for the mentally ill may not work for the mentally retarded." (Quinn, supra, 86 Cal.App.4th at p. 1294, 103 Cal.Rptr.2d 915.) But the Howard N. principles exclude from section 6500 only those people who can control their dangerous behavior, notwithstanding the lack of medication or treatment to help them do so. The lack of medication or treatment is not a causative factor in these people's dangerousness. Thus, the lack of medication or treatment is not a sound basis to treat defendant unlike persons confined under other civil commitment schemes.
As in Howard N., we conclude the Legislature would prefer to construe the section 6500 scheme as including a requirement of serious difficulty in controlling dangerous behavior, rather than invalidate the scheme in its entirety. (Howard N., supra, 35 Cal.4th at p. 133, 24 Cal.Rptr.3d 866, 106 P.3d 305.) Should defendant be the subject of a future section 6500 petition, county counsel shall have the burden of pleading and proving the factors mandated by Howard N.

DISPOSITION
The judgment is reversed.
We concur: BLEASE, Acting P.J., and HULL, J.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] "Commitments under section 6500 are for a one-year period. Where the appellate decision is rendered beyond that period, the appeal is technically moot. [Citation.]" (People v. Quinn (2001) 86 Cal.App.4th 1290, 1293, 103 Cal.Rptr.2d 915 (Quinn ); see In re Krall (1984) 151 Cal.App.3d 792, 794, fn. 2, 199 Cal.Rptr. 91.) But courts have decided such appeals where the issues are recurring and present important questions of law. (Krall, at p. 794, fn. 2, 199 Cal.Rptr. 91.) A failure to decide this appeal could mean these issues would repeatedly evade appellate review. (Ibid.)