[No. B139439. Second Dist., Div. Six. Feb. 7, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE QUINN, Defendant and Appellant.

**COUNSEL**

Paul Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Lance E. Winters and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

GILBERT, P. J.—A mentally retarded person who is a danger to himself or to others may be committed to the State Department of Developmental Services under Welfare and Institutions Code section 6500.[1]

Here we conclude such commitment is proper without proving that mental retardation was a cause of the dangerous condition.

Defendant Willie Quinn appeals an order of commitment to Atascadero State Hospital. We conclude that the order of commitment is supported by the evidence and section 6500 does not violate equal protection of the laws. Neither was Quinn denied competent counsel. We affirm.

### FACTS

The District Attorney of the County of San Luis Obispo filed a petition to commit Quinn to the custody of the State Department of Developmental Services, and to confine him as a dangerous mentally retarded person under section 6500.

Quinn has a long history of criminal offenses and dangerous behavior. He attacked a nurse with a pair of scissors at the psychiatric ward of the Sacramento General Hospital. He cut his arm with a razor at San Quentin State Prison in 1998.

Quinn has a history of psychiatric treatment since age 17. His language comprehension skills are equivalent to an eight-year-old child. As a child his intelligence quotient was less than 70. He had to be physically restrained by those who were trying to treat him.

The court appointed the public defender to represent Quinn and ordered an expert evaluation of him.

Telford Moore, Ph.D., concluded Quinn was "mentally retarded and is Regional Center eligible." He also found him "to be a serious danger to any

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

individual living in or working at a Regional Center facility . . . ." He recommended that Quinn "remain in a most-restrictive environment."

At Quinn's hearing his attorney conferred with Quinn's treating doctors. He then submitted the case on Doctor Moore's medical report without calling any witnesses.

The court found that Quinn is "a mentally retarded person and [] a danger to himself or others . . . ." It ordered Quinn committed to the State Department of Developmental Services for treatment and rehabilitation. It also found "that the least restrictive, most appropriate placement is a placement at the Atascadero State Hospital."

DISCUSSION

### I. *Is This Appeal Moot?*

■ The Attorney General contends that because Quinn's commitment order will expire before the issuance of our decision the appeal is moot. Quinn appealed from the order made on December 17, 1999, raising constitutional issues. Commitments under section 6500 are for a one-year period. Where the appellate decision is rendered beyond that period, the appeal is technically moot. (*In re Krall* (1984) 151 Cal.App.3d 792, 794, fn. 2 [199 Cal.Rptr. 91].) But we have decided such appeals where the issues are recurring and present important questions of law. (*Ibid.*) Moreover, this is not the first time he has been committed. A failure to decide this appeal could mean these issues could repeatedly evade appellate review. (*Ibid.*) We thus decide Quinn's appeal on its merits.

### II. *Is Proof That Quinn's Mental Retardation Caused Him to Be Dangerous Required Under Section 6500?*

■ Quinn contends that his commitment was unlawful because there was no proof that he was dangerous because of mental retardation. Section 6500 states "no mentally retarded person may be committed to the State Department of Developmental Services . . . unless he or she is a danger to himself . . . or others." ■ " 'To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent.' [Citation.]" (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].)

■ The words of this statute contain no requirement that the dangerous condition be caused by mental retardation. "[S]ection 6500 singles out the

mentally retarded . . . and permits their involuntary confinement . . . upon proof of mental retardation and dangerousness to self or others . . . ." (*In re Krall, supra,* 151 Cal.App.3d at p. 795.) The causation Quinn seeks to add is not the language of the statute.

Nevertheless, Quinn contends the Legislature intended that some commitment statutes require proof of causation and section 6500 does not show the legislative intent not to require it for the mentally retarded. (*Hansen v. Department of Social Services* (1987) 193 Cal.App.3d 283, 291-292 [238 Cal.Rptr. 232].)

The Legislature recognized that the medical care for the retarded and attendant legal procedures differ from those for the mentally ill. (*Cramer v. Gillermina R.* (1981) 125 Cal.App.3d 380, 388 [178 Cal.Rptr. 69]; *In re Krall, supra,* 151 Cal.App.3d at p. 795.)

To adopt Quinn's position would remove many of the mentally retarded from the protection of the statute. It would undermine the goal to assist all of these helpless people and expose some of them to death or serious danger. We conclude that the evidence that Quinn was dangerous and mentally retarded was, by itself, sufficient to authorize commitment under section 6500.

### III. *Does Section 6500 Deny Quinn Equal Protection of the Laws?*

Quinn contends the absence of a causational requirement in section 6500 violates his right to equal protection of the laws. His attempt to support this theory is based on differences between statutes involving the mentally ill and the retarded.

But these two groups are not similarly situated and there is a rational basis for treating them differently. (*Cramer v. Gillermina R., supra,* 125 Cal.App.3d at p. 388.) The legislative scheme recognized that medications and treatments for the mentally ill may not work for the mentally retarded. Section 6500 does not discriminate against the mentally retarded; it distinctly accommodates their unique condition. (*Cramer,* at p. 388.) "These schemes are not unconstitutional on equal protection grounds because the classifications are based upon accepted factual and medical differences between the mentally retarded and mentally ill." (*Ibid.*)

The Legislature rationally decided to provide special protection for the mentally retarded. Section 6500 furthers the state's compelling interest to protect all the retarded persons who are dangerous, and not just those whose

violence is caused by retardation. This does not violate Quinn's right to equal protection of the laws.

## IV. *Was Quinn Denied Competent Counsel?*

Quinn contends that his counsel denied him an adequate defense by failing to raise the causational issue. In order to prevail on this ground he must prove that counsel's deficient performance resulted in prejudice. (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1023 [80 Cal.Rptr.2d 676].) He may not assert a claim of incompetence based on the failure to do something not required by law.

He also contends that it was incompetence for his counsel not to argue for a less restrictive placement than Atascadero State Hospital. Quinn's theory is that the mentally retarded must be placed in regional centers, not state hospitals. But the statutory scheme allows placement in either type of facility depending upon what is "the most appropriate alternative." (§ 6509, subd. (a).) There is a preference for the least restrictive environment, provided that "public safety" will not be compromised. (§ 6506.)

Doctor Moore considered "Quinn to be a serious danger to any individual living in or working at a Regional Center facility . . . ." He thus recommended that he "remain in a most-restrictive environment." Quinn's counsel conferred with his doctors at the hearing. He argued that Quinn's doctors felt that more progress at Atascadero State Hospital could lead to a placement at Napa. Thereafter a relative could be his conservator.

Quinn has not referred to any medical evidence which supports a lesser restrictive placement. He concedes that the record does not show why counsel decided to submit on Doctor Moore's report. He speculates that he could have received a less restrictive placement had counsel called witnesses. But speculation does not support a claim of ineffective assistance. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 [62 Cal.Rptr.2d 437, 933 P.2d 1134].) Quinn has not demonstrated that his attorney was motivated by anything other than a legitimate desire to protect his interests.

The judgment is affirmed.

Yegan, J., and Coffee, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 13, 2001.