Filed 8/18/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| In re A.M., a Person Coming Under the Juvenile Court Law. | |
| --- | --- |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.M.,<br><br>        Defendant and Appellant. | A156432<br><br>(Alameda County<br>Super. Ct. No. JV-026518-09) |

Minor A.M. appeals from the juvenile court's order placing him in a short-term residential therapeutic program (STRTP).  Minor argues that under Welfare and Institutions Code sections 706.5 and 706.6,[1] the probation department was required to, but did not, convene a child and family team (CFT) meeting prior to the disposition hearing.  Minor further argues the probation department failed to conduct a " 'family find' " as required by section 628 and that the dispositional order should be vacated because both of these statutory prerequisites were not satisfied.

Although the appeal is now moot because minor has been released from the STRTP in which he had been placed and returned to his mother's home, he asks us to rule on the merits because the issues are of public importance,

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

are likely to recur, and continue to evade review. We are aware of several unpublished decisions issued in this district in the last year in which minors raised the issue of the probation department's failure to convene a CFT meeting prior to a foster care placement,[2] and the record here indicates noncompliance with statutory directives. We exercise our discretion to resolve an issue of broad public interest that is likely to recur while evading appellate review, and we then dismiss the appeal as moot. (*People v. Cheek* (2001) 25 Cal.4th 894, 897–898.)

## BACKGROUND

In April 2016, minor A.M. became a ward of the Alameda County Juvenile Court and was placed on probation after being adjudicated in violation of Penal Code section 22210 (possession of leaded cane or similar instrument). He was placed in his mother's home with services, but absconded. In May 2017, minor admitted a wardship petition alleging he committed assault with force likely to produce bodily injury (Pen. Code, § 245, subd. (a)(4)) in exchange for dismissal of a related robbery count. Minor was placed at Camp Sweeney and absconded in September 2017. A warrant was issued for his arrest, and at a disposition hearing in October 2017, he was released to home supervision on GPS[3] monitoring pending disposition. In November 2017, minor removed his GPS monitor and absconded from home supervision, and his whereabouts were unknown until December 2018.

In December 2018, minor, who was then 16 years old, was arrested for the instant offense during a " 'buy bust' " operation in San Francisco. Minor

---

[2] *In re T.K.* (Nov. 27, 2019, A155949); *In re J.M.* (Jan. 7, 2020, A156138); *In re J.C.* (June 2, 2020, A156800).

[3] GPS stands for global positioning system.

2

asked an undercover officer if the officer wanted " 'shards,' " which is a street term for crystal methamphetamine. The officer handed minor $20 of marked city funds, and the minor handed the officer a small amount of methamphetamine. Minor was arrested, searched, and found in possession of a loaded automatic handgun, a bag of suspected methamphetamine, packages of suspected methamphetamine, six pills believed to be opioids, a digital scale, a cell phone, empty plastic baggies, and $100. Minor waived his *Miranda* rights and when questioned admitted he was a member of the " 'Brown Pride Locos' " gang in San Francisco's Mission District.

The juvenile delinquency proceeding commenced in San Francisco. The Welfare and Institutions Code section 602 petition alleged possession for sale of a controlled substance (methamphetamine) (count I; Health & Saf. Code, § 11378); sale and giving away of a controlled substance (methamphetamine) (count II; Health & Saf. Code, § 11379, subd. (a)); unlawful possession of a controlled substance (methamphetamine) with a firearm (count III; Health & Saf. Code, § 11370.1, subd. (a)); concealed firearm on person, not registered owner (count IV; Pen. Code, § 25400, subds. (a)(2), (c)(6)(A)–(B)); carrying a loaded firearm, not registered owner (count V; Pen. Code, § 25850, subds. (a), (c)(6)); and minor in possession of firearm (count VI; Pen. Code, § 29610). On December 11, 2018, minor was ordered detained; and on December 14, 2018, he admitted count III and the remaining counts were dismissed.

Minor's case was transferred to Alameda County, his county of residence, for disposition. On December 21, 2018, the Alameda County Superior Court held a hearing on the transfer, accepted the case from San Francisco, and set a disposition hearing date. Defense counsel requested that "the Court order Probation to do a Family Find under Welfare & Institutions

Code 628(d); that the Court order Probation to hold a Child and Family Team meeting under 16501 of the Welfare & Institutions Code; and that the Court order Probation to do a case plan under 706.6 of the Welfare & Institutions Code."[4] The juvenile court responded that it expected probation to proceed as required by statute but that because there had not yet been any deficiencies the court did not believe an order was required. Defense counsel responded: "I think that Probation has been falling on their duties. I've been asking for these things to happen in many, many cases, and they have not been happening. [¶] Kids have been being sent to placement . . . and Child and Family Team meetings are not being held, case plans are not being written, and the placements are not matching the case plans based on a Child and Family Team meeting because there's no Child and Family Team meeting taking place. [¶] I have not yet once, since I've been asking for these, attended or even heard of a Child and Family Team meeting being held. So I think it is up to the Court to order Probation to do these things because they're not doing them. [¶] And the law has been around for a while now. There's no excuse for them not to do it. . . ." (*Sic.*)

The juvenile court ultimately stated: "And I agree with you, you're correct in your statement as to what the law provides. I don't know that it's something the Court orders, but it is an administrative responsibility of Probation. And the Court will have an obligation to make corrective orders in

---

[4] Section 628, subdivision (d) states that probation officers who believe a minor is at risk of entering foster care placement must investigate to identify and locate grandparents, adult siblings, and other relatives of the child. Section 16501, subdivision (a)(4) defines " 'child and family team' " and provides that the activities of the team include "[p]roviding input into the placement decision made by the placing agency . . . ." Section 706.6 identifies the information to be included in a case plan where foster care is being considered.

the event those obligations are not fulfilled. [¶] . . . [W]e need to get started on identifying the Child and Family Team, and I would expect it to be convened at the earliest possible opportunity so that people can discuss the issues presented . . . and how we move forward." The juvenile court then stated the case plan should be attached to probation's recommendation and that "[t]he Probation Department has to consider the recommendations in the CFT group and then explain discrepancies [between the recommendations of the CFT and the probation department] . . . ."

On January 4, 2019, the Alameda County Probation Department filed a dispositional report which summarized the offense, probation's interviews with minor and with minor's mother, and recommended an out-of-home placement for the minor. The report also summarized minor's background and family history, including that he had previously lived with his grandmother and uncle in San Francisco, had been AWOL for one year prior to the present offense, was not attending school, had a history of running away, his behavior had escalated, and he appeared to have a love of " 'street life.' " The minor's Youth Level Service score, which is an actuarial measure to assess risk of recidivism, was in the high category. The probation officer stated her belief that minor would continue to reoffend and run away if he were returned to the community and that he needed a structured environment for rehabilitation. She recommended an out-of-home placement. The report does not mention a CFT meeting.

On January 8, 2019, the parties returned to court for the disposition hearing. Defense counsel objected to placement because "Probation has not followed the Continuum of Care Reform Act and Probation has disregarded the Court's orders. [¶] . . . to begin the Child and Family Team meeting." Counsel further reminded the juvenile court she had asked for a "Family

5

Find to take place" and stated minor had a family friend he would like to be considered as a potential foster family placement.[5] She further argued: "[W]e had hoped that the Child and Family Team meeting would have taken place prior to today because they're supposed to have a case plan in place prior to the disposition hearing and the case plan is supposed to denote any discrepancies between the Child and Family Team meeting and the Probation Officer's recommendation. [¶] So I'm asking that the Court . . . not follow the recommendation because . . . they have not met their obligations under the Continuum of Care Reform Act."

The prosecutor "submit[ted] that to the Court, the Continuum of Care Act," but argued that out-of-home placement was needed based upon the background and recommendation provided in the disposition report. Defense counsel again asserted that a CFT meeting is required before placement is ordered. The juvenile court referenced section 706.5, subdivision (b), which states, "If placement in foster care is not recommended by the probation officer prior to disposition, but the court orders foster care placement, the court shall order the probation officer to prepare a case plan, as described in Section 706.6," and stated this section allows for a CFT meeting to be conducted after a placement order. Defense counsel argued this subdivision only applies where probation does not recommend foster care, but here, where probation is recommending foster care placement, the CFT meeting must be done prior to disposition. The juvenile court found the statute provides "some flexibility" as to the timing of the CFT meeting and ordered placement because "this case screams placement to me as a judge" based on the high Youth Level Service score, minor's history of absconding from camp,

_____

[5] At a later hearing, counsel argued for consideration of placement with a family member who lived in Oakley.

his probation history, and his failure to attend school since he had absconded from camp. The juvenile court ordered minor to be placed out of his home, with numerous probation conditions. The court continued the matter for two weeks for a placement review hearing and ordered "that Probation start the CFT process," which the court stated includes a "Family Find."

On January 16, 2019, the probation department filed a placement review, recommending that minor be committed to an STRTP located in Southern California so that it would have a Sureño, rather than Norteño, gang population.[6] The placement review stated minor's mother agreed with the probation officer's recommendation. Regarding the juvenile court's order to conduct a CFT meeting, the placement review stated: "The undersigned would like to clarify that the initial CFT meeting is required by law within the first 60 days of the initial placement order. In this case, the youth was committed to placement on January 8, 2019. Probation has until March 8, 2019, to hold the first CFT meeting. According to WIC 706, this meeting can occur while the youth is in detention or placement. [¶] It should be noted that according to the All County letter dated October 7, 2016,[7] 'it is important to recognize that a CFT meeting does not represent the entire process, but is simply one part of a larger strategy, which involves youth and families, in the placement process to help them successfully reach their goals.' Additionally, the CFT purpose is to provide input into placement concerns, but the ultimate authority for the placement decision rests with the placing agency."

---

[6] According to the probation officer, minor reported that his issues at Camp Sweeney stemmed from a perception that he was affiliated with Sureños.

[7] The letter referenced is not part of the record.

7

On January 22, 2019, the parties returned to court for the placement review hearing. Defense counsel reminded the court she had previously asked for a family find and CFT meeting but they had still not been conducted. She objected to placement in an STRTP because it should be used as a last resort, and she again asked probation to conduct a family find and a CFT meeting to find a family member or a friend as a suitable placement. She argued minor does not do well in group homes and that probation needs to look into other family members as possible options and provide a case plan reflecting the CFT meeting input prior to disposition as statutorily required.

The juvenile court "agree[d] with [defense counsel] in many respects" but stated that the CFT meeting does not control and is simply advisory. The juvenile court further stated: "So what I am concerned with is that it does seem like probation spent more time coming up with reasons why not to do a meeting than actually doing one. That jumped out at me with this placement review, like we have some sort of legal opinion that they're giving in this. I don't know where this legal opinion comes from, so I would like to know where probation is getting this information from as to why they believe when the Court orders a family team meeting, what their definition of that is, and why it wasn't done." The probation officer responded that she spoke with minor and that she spoke with the mother, and that minor was interviewed by and accepted by Optimist, which was one of the recommended STRTP's. She explained that "it takes time to conduct a C. F. T." and her focus was on getting minor out of the detention setting as soon as possible.

The juvenile court questioned whether a further delay for a CFT meeting was necessary, stating: "If you want to delay this further, you have him potentially lose a bed for some sort of family team meeting. Where [the probation officer] has met with the mother and the mother has given her

input as to the Optimist placement option, and Mother said she believes it is the best placement option and could lead to better reunification with the mother when he comes home, all of that makes a lot of sense." Defense counsel responded that minor "doesn't do well in group homes" and that "he has a family member in Oakley. I think probation department has to look at family first and see what's out there . . . , especially with a kid with this much trauma and this much history and no group home has worked well for him." The People argued that probation's recommendation was supported by minor's history, and the juvenile court concluded: "I'm going to direct probation to follow whatever plan they want to follow at this stage. So if you think Optimist is the best at this stage, there's been substantial compliance with the family team meeting, in that they have spoken with [A.M.], they have spoken with the mother. [¶] I would agree with [defense counsel] that they have not looked at, maybe, some relatives, but I do believe that for the minor's best interest at this stage, it would be best for him to go to an S. T. R.T. P. program [*sic*]."[8]

There was no testimony at either the disposition hearing or the placement review hearing from the minor, his mother, or any other friend or relative of the minor.

## DISCUSSION

Minor argues the juvenile court erred by following the probation department's recommendation to place minor outside his home, which was made without first conducting a CFT meeting as required under sections 706.5 and 706.6. The People argue minor's claim is forfeited, the statutes

---

[8] The juvenile court did not state either on the record at the placement review hearing or in its minute order that the probation department must complete the CFT meeting after minor was placed in an STRTP, and the record is silent as to whether a CFT was convened after minor's placement.

9

allow for flexibility as to the timing of a CFT meeting and the CFT meeting is advisory only, the juvenile court correctly found substantial compliance with the statutory requirements, and that any error was harmless. Minor also argues the juvenile court improperly abdicated its responsibilities to the probation department. We find minor's claim was not forfeited and that the juvenile court erred by placing minor in an STRTP based on the probation department's recommendation, which failed to include CFT input.

## I. *Minor Did Not Forfeit Claim.*

The People argue that minor forfeited or waived this issue because defense counsel "did not take up the court's offer" when the juvenile court stated, "If you want to delay this further, you have him potentially lose a bed for some sort of family team meeting." The People ignore defense counsel's response to the juvenile court, which was that minor "doesn't do well in group homes" and that "he has a family member in Oakley. I think probation department has to look at family first and see what's out there . . . , especially with a kid with this much trauma and this much history and no group home has worked well for him." Thereafter the court heard from the prosecutor and then concluded minor should be placed in an STRTP. There has been no forfeiture; minor preserved the issue for appeal by repeatedly asking that the statutorily required CFT meeting and family find be conducted. He first asked at the December 21, 2018 transfer hearing, and he made the same demand at the January 8, 2019 disposition hearing, and when the CFT meeting had still not occurred by the time of the January 22, 2019 placement review hearing, minor objected again.

## II. *Statutory Framework.*

Before a disposition order may be entered in juvenile delinquency proceedings, the probation officer must submit to the juvenile court a social

study of the minor.  (§§ 706, 706.5.)  If the probation officer recommends placement in foster care,[9] the social study "shall include a case plan, as described in Section 706.6."  (§ 706.5, subd. (a); Cal. Rules of Court, rule 5.785(a)(1).)  This study and case plan must be submitted to the court 48 hours before the disposition hearing.  (Cal. Rules of Court, rule 5.785(a)(1)–(2) & (c)(1).)

Section 706.6 lists the information to be included in the case plan.  (§706.6, subds. (c)–(q).)  In 2015, the Legislature enacted the Continuum of Care Reform Act (the Act), which amended several statutes, including section 706.6.  (See Stats. 2015, ch. 773, § 49.5.)  The Act sought to improve California's child welfare system.  (*Id.*, § 1, subd. (a).)  It introduced the idea of the CFT, recognizing "[t]hat working with the child, youth, and family as part of a team results in better outcomes.  The child and family team, including extended family and community or tribe, is the primary vehicle for collaboration on the assessment, case planning, and placement decisions that are made by placing agencies.  Use of these teams is based upon the wraparound model of care and is intended to support social work, practice, and decisionmaking."  (*Id.*, § 1, subd. (c)(5).)

Section 706.6 states: "Services to minors are best provided in a framework that integrates service planning and delivery among multiple service systems, including the mental health system, using a team-based approach, such as a child and family team.  A child and family team brings together individuals that engage with the child or youth and family in assessing, planning, and delivering services.  Use of a team approach

_____

[9] Section 727.4, subdivision (d)(1) defines " 'foster care' " to mean residential care provided in any of the settings described in section 11402.  Section 11402 includes STRTP's.

11

increases efficiency, and thus reduces cost, by increasing coordination of formal services and integrating the natural and informal supports available to the child or youth and family." (§ 706.6, subd. (a).) "In its development of the case plan, the probation agency shall consider any recommendations of the child and family team, as defined in paragraph (4) of subdivision (a) of Section 16501. The agency shall document the rationale for any inconsistencies between the case plan and the child and family team recommendations." (§ 706.6, subd. (b)(2).)

Section 16501 defines the CFT as "a group of individuals who are convened by the placing agency and who are engaged through a variety of team-based processes to identify the strengths and needs of the child or youth and their family, and to help achieve positive outcomes for safety, permanency, and well-being." (§ 16501, subd. (a)(4).)

Section 706.5, subdivision (a) states that "[i]f placement in foster care is recommended by the probation officer, or where the minor is already in foster care placement or pending placement pursuant to an earlier order, the social study prepared by the probation officer that is received into evidence at disposition pursuant to Section 706 shall include a case plan, as described in Section 706.6." (§ 706.5, subd. (a).) Where "placement in foster care is not recommended by the probation officer prior to disposition, but the court orders foster care placement, the court shall order the probation officer to prepare a case plan, as described in Section 706.6, within 30 days of the placement order. . . ." (§ 706.5, subd. (b).)

## III. *It was error to place minor in an STRTP where probation did not comply with sections 706.5 and 706.6.*

A juvenile court's dispositional decision is reviewed for an abuse of discretion. (*In re Oscar A.* (2013) 217 Cal.App.4th 750, 755.) This case also presents an issue of statutory interpretation, which we review de novo. (*John*

*v. Superior Court* (2016) 63 Cal.4th 91, 95.) In cases involving statutory construction, " 'our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.' . . . We begin by examining the statutory language because the words of a statute are generally the most reliable indicator of legislative intent. . . . We give the words of the statute their ordinary and usual meaning and view them in their statutory context. . . . We harmonize the various parts of the enactment by considering them in the context of the statutory framework as a whole. . . . 'If the statute's text evinces an unmistakable plain meaning, we need go no further.' " (*In re C.H.* (2011) 53 Cal.4th 94, 100, citations omitted.)

The statutory scheme discussed above requires that when "placement in foster care is recommended by the probation officer," the case plan prepared by the probation officer "shall consider any recommendations of the [CFT]" and "shall document the rationale for any inconsistencies between the case plan and the [CFT] recommendations." (§§ 706.5, subd. (a), 706.6, subd. (b)(1)–(2).) The case plan "is received into evidence at disposition . . . ." (§ 706.5, subd. (a).) Here, neither the probation department's disposition report nor its placement review referenced CFT recommendations, and the People admitted no CFT meeting was held. The probation department is duty-bound to follow the directives of the Legislature, and here the record shows that despite the juvenile court's statement at the December 21, 2018 transfer hearing that the probation department's recommendation "has to consider the recommendations in the CFT group and then explain discrepancies [between the recommendations of the CFT and the probation department]" and its ruling at the January 8, 2019 disposition hearing "that Probation start the CFT process," which includes a "Family Find," no CFT was convened. We find the juvenile court erred in placing minor in an

13

STRTP based upon a probation department recommendation that failed to consider the input of the CFT, which was never even convened.

The People argue that the statutes indicate " 'some flexibility' " as to the timing of the CFT meeting.[10] The People rely upon section 16501, subdivision (a)(4)(B)(i)(III), which states that "[a] representative from a foster family agency or short-term residential therapeutic program with which a child or youth is placed" shall be included in a CFT "when appropriate . . . ."[11]

---

[10] We note that the probation department's placement review states that it "would like to clarify that the initial CFT meeting is required by law within the first 60 days of the initial placement order. In this case, the youth was committed to placement on January 8, 2019. Probation has until March 8, 2019, to hold the first CFT meeting." The probation department's report does not provide a citation to support its statement that the first CFT meeting is to be held within 60 days of the placement order, and the People did not argue below, and do not argue on appeal, that there is a 60-day window from the date of the placement order within which to conduct the initial CFT meeting. As discussed above, the language of the relevant statute and the California Rules of Court provides that where the probation department recommends foster care placement, the CFT recommendations are to be incorporated into the probation department's report submitted to the court at least 48 hours before disposition, not 60 days after the placement order. (§ 706.5, subd. (a); Cal. Rules of Court, rule 5.785(a)(2).)

[11] At oral argument, the People argued section 16501.1, subdivision (a)(3) also supports their position that the statutes provide for flexibility as to the timing of the CFT meeting. Section 16501.1 provides the principles governing case plans where the juvenile court exercises jurisdiction in dependency cases under section 300 et seq. Section 16501.1, subdivision (a)(3) states: "The agency shall consider and document the recommendations of the child and family team, as defined in Section 16501, if any are available. The agency shall document the rationale for any inconsistencies between the case plan and the child and family team recommendations." No part of section 16501.1 refers to juvenile delinquency proceedings, and we do not find the language of subdivision (a)(3) suggests flexibility as to the timing of a CFT meeting required under sections 706.5 and 706.6 when a probation officer recommends foster care placement in juvenile delinquency proceedings.

14

The People argue the use of "is" in this subdivision contemplates that the minor is already placed in the STRTP at the time the CFT is held. The People read too much into the use of the present tense in section 16501's list of persons to be included in a CFT. Section 16501 defines the CFT, which is to be convened for both dependency and delinquency cases. (§ 16501, subd. (a)(1) & (4).) Sections 706.5 and 706.6 provide the requirements for a CFT where the probation department recommends foster care placement, and they mandate that the CFT recommendation be included in the probation department's report "that is received into evidence *at disposition . . . .*" (§ 706.5, subd. (a), italics added.) Instead of harmonizing the various parts of the statutory framework, the People's argument ignores section 706.5, subdivision (a)'s reference to information to be provided at disposition and the multiple uses of the word "shall" in sections 706.5 and 706.6. (See §§ 706.5, subd. (a) ["If placement in foster care is recommended by the probation officer . . . , the social study prepared by the probation officer that is received into evidence at disposition pursuant to Section 706 *shall* include a case plan, as described in Section 706.6" (italics added)], 706.6, subd. (b)(2) ["In its development of the case plan, the probation agency *shall* consider any recommendations of the child and family team . . . . The agency *shall* document the rationale for any inconsistencies between the case plan and the child and family team recommendations" (italics added)].) Further, the CFT "*shall* [¶] . . . [¶] (ii) [provide] input into the placement decision made by the placing agency and the services to be provided in order to support the child or youth." (§ 16501, subd. (a)(4)(A), italics added.) The plain language of the relevant statutes is mandatory. (See *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050 [use of "shall" is construed as mandatory].) Section 16501, subdivision (a)(4)(B)(i)(III) does not speak to when the initial CFT is

15

to be held, and we do not assume that the use of the present tense in identifying representatives of a foster family agency or an STRTP suggests "flexibility" as to when the initial CFT meeting must be held when the probation department recommends foster care.[12]

The People's argument that the CFT is advisory only and that the juvenile court retained authority to make a disposition in the minor's best interest misses the point. Minor concedes, as he must, that the CFT is advisory and that the juvenile court has authority to order foster placement even where the probation department does not recommend such placement. (§§ 202, subds. (a) & (b), 706.5, subd. (b).) But, when the probation department recommends foster care placement, the statutes require the probation department to conduct the CFT meeting and to incorporate the CFT's input into the report submitted to the juvenile court before disposition. (§§ 706.5, subd. (a), 706.6, subd. (b)(2).) Simply because the CFT's recommendation is advisory does not mean it may be excluded entirely or delayed until after disposition.

---

[12] Further, section 16501's use of the present tense in referencing foster care or an STRTP in which a minor "is placed" is consistent with subdivisions (b) and (c) of section 706.5. Subdivision (b) allows an additional 30 days for the probation officer to prepare a section 706.6 case plan when the court orders foster care placement without first receiving a recommendation from the probation department. In such a case, the minor would already be in foster care by the time the probation department provides the section 706.6 case plan with the CFT recommendations, and the CFT would include a representative of the foster family agency or the STRTP. Subdivision (c) states that "[a]t each status review hearing, the social study shall include . . . an updated case plan as described in Section 706.6 . . . ." Updated case plans prepared after a minor is already placed in an STRTP or in foster care are to include CFT recommendations, and the CFT would include a representative of the foster family agency or the STRTP in which the minor "is placed." (§ 16501, subd. (a)(4)(B)(i)(III).)

16

Here, the probation department did not follow the statutory scheme, despite the juvenile court's repeated rulings that it do so. As a result, the juvenile court was never given the CFT's input, as is statutorily required. Accordingly, when the juvenile court followed the probation department's recommendation that minor be placed in an STRTP, it did so without the benefit of the CFT input the Legislature has mandated be provided to the court when the probation department recommends foster care placement. This was an abuse of discretion. (See *In re Devin J.* (1984) 155 Cal.App.3d 1096, 1101 [finding court erred in committing minor to California Youth Authority without the benefit of a current social study as required by § 706].)[13] The record reflects some frustration by the juvenile court that its repeated rulings for the probation department to convene the CFT meeting were not followed, as well as its desire to avoid unnecessary delay in securing placement for minor. While these sentiments are understandable, the Legislature has mandated that CFT input be considered when the probation department recommends foster care placement, and it is error to acquiesce to the probation department's refusal to comply with this mandate.

Nor are we persuaded by the People's argument that the probation department substantially complied with sections 706.5 and 706.6 because the disposition report and placement review provide detail regarding the minor's

---

[13] There may be instances in which the probation department does not recommend foster care placement but the juvenile court orders such placement. In such cases, subdivision (b) of section 706.5 provides that the court "shall order the probation officer to prepare a case plan, as described in Section 706.6 [which includes consideration of the CFT's recommendations], within 30 days of the placement order." This provision does not apply to the instant case because the probation department did recommend foster care placement and therefore was required to include the CFT's recommendations in its report "that is received into evidence at disposition . . . ." (§ 706.5, subd. (a).)

background and the probation department's reasons for recommending an STPTP, and state minor's mother's consent to an STPTP in Southern California. It is undisputed that no CFT meeting was held. Section 706.6, subdivision (a) explains the purpose of the CFT, which is to provide a "team-based approach" by bringing "together individuals that engage with the child or youth." Section 16501, subdivision (a)(4)(B)(i) lists those to be included in a CFT, which includes a "mental health representative" and others who may support the minor. Here, despite the juvenile court's ruling that the probation department was to include the CFT recommendations in its report filed with the court, the probation department failed to even convene the required CFT before it recommended foster placement. Thus the "team-based approach" mandated by statute was thwarted. The fact that the probation department spoke with the minor's mother is not a substitute for a CFT, as defined by statute. Had a meeting been convened, it may have included minor's grandmother, his uncle, and his family member in Oakley, as well as a mental health representative, and the CFT could have explored whether an STRTP was the best option for minor or if an alternative placement should be considered.[14]

---

[14] Minor acknowledges that a court may find substantial compliance where a CFT meeting was convened but it was later discovered that one nonpivotal person had been inadvertently omitted, but he contrasts that hypothetical situation to his case where no CFT meeting was convened. We agree that under other circumstances, a court may correctly find substantial compliance with the CFT requirement. But here, there was no attempt to convene a CFT meeting or to incorporate its input into the report provided to the court. We do not opine as to the precise process for convening a CFT meeting (e.g., by telephone, in writing, or in person) or what may constitute substantial compliance in other circumstances, such as where the probation department makes a reasonable good faith effort to convene a CFT meeting but is unable to do so. Those issues are not before us.

The People argue that even assuming a CFT meeting was required before disposition, any error is harmless because the information minor would have presented at a CFT meeting was considered by the probation officer and the juvenile court. Although we address the propriety of the juvenile court's order because the matter is one of public interest that is likely to recur yet evade review, the issue of harmless error is moot as to minor because he has been released from his STRTP placement. Thus, we need not speculate on what would have been recommended had a CFT been convened and whether the juvenile court may have been persuaded to select an alternative placement, as doing so would have little value at this stage. (See *People v. Sweeney* (2009) 175 Cal.App.4th 210, 218.)[15]

Because we find the juvenile court erred in placing minor in an STRTP based upon a probation department recommendation that failed to consider the input of the CFT, which was never even convened, it is not necessary to reach minor's final argument that the juvenile court erred by abdicating responsibility to the probation department to determine when to convene a CFT.

---

[15] Minor also argues that the juvenile court erred by issuing a placement order where the probation department failed to engage in the "family find" required by section 628. Minor asks us to infer that the probation department ignored section 628's requirement to investigate adult relatives of a minor who is at risk of entering foster care placement. According to minor, the fact that the dispositional report only mentions relatives in passing but does not state the probation department conducted a complete family find supports the inference that none was conducted. Unlike with respect to the CFT, which the People admitted had not occurred, we cannot tell from the record whether the probation department investigated minor's adult relatives. On this record we cannot conclude that the probation department failed to conduct the section 628 investigation.

## DISPOSITION

Having decided the issues on the merits because they are likely to recur, we dismiss the appeal as moot.

_____
Jackson, J.

WE CONCUR:


_____
Siggins, P. J.


_____
Fujisaki, J.

A156432/*People v. A.M.*

21

A156432/People v. A.M.

Trial Court:        Superior Court of the County of Alameda

Trial Judge:        Peter Ottenweller, J.

Counsel:            Violet Elizabeth Grayson, under appointment by the Court
                    of Appeal, for Defendant and Appellant.

                    Xavier Becerra, Attorney General, Lance E. Winters and
                    Jeffrey M. Laurence, Assistant Attorneys General,
                    Amit Kurlekar, Christina vom Saal and Christen
                    Somerville, Deputy Attorneys General, for Plaintiff
                    and Respondent.