Filed 7/2/21  P. v. Angel R. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B305405 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. ZM048311) |
| v. | |
| ANGEL R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Laura Streimer, Judge Pro Tempore.  Affirmed.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Following a court trial on February 25, 2020, the trial court found that Angel R.[1] was a person with a developmental disability who was dangerous to himself or others within the meaning of Welfare and Institutions Code section 6500.[2] The court ordered Angel to continue his commitment with the Department of Developmental Services at the Canyon Springs Developmental Center (Canyon Springs) for one year.

On appeal, Angel argues the evidence was insufficient to support a finding that his developmental disability caused him to have serious difficulty in controlling his dangerous behavior. He also contends the trial court improperly admitted portions of the records from Canyon Springs into evidence in violation of the hearsay rule and the due process clause.

We conclude the evidence was sufficient to support the trial court's order of commitment. In view of the strength of the evidence, any error in admitting the challenged portions of the Canyon Springs records was harmless. Thus, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Petition for Commitment Pursuant to Section 6500

Section 6500 establishes civil commitment proceedings for persons with developmental disabilities who are "found to be a

---

[1] Pursuant to California Rules of Court, rule 8.90(b)(3), (10), which governs privacy in opinions, we refer to defendant in this appeal of an involuntary commitment under Welfare and Institutions Code section 6500 et seq. by his first name and last initial.

[2] All unspecified statutory references are to the Welfare and Institutions Code.

danger to self or others."  (§ 6500, subd. (b)(1).)  A court may order a person involuntarily committed for a maximum period of one year upon finding that the person (1) has a developmental disability, (2) is a danger to himself or others, and (3) "has serious difficulty controlling his dangerous behavior because of" the developmental disability.  (*People v. Sweeny* (2009) 175 Cal.App.4th 210, 214; see § 6500, subd. (b)(1).)

The prosecution has the burden to prove the elements necessary for a section 6500 commitment beyond a reasonable doubt.  (*Money v. Krall* (1982) 128 Cal.App.3d 378, 348.)

On January 4, 2019, the trial court sustained an initial petition pursuant to section 6500, committing Angel to Canyon Springs for the statutory maximum of one year.  (See § 6500, subd. (a)(2)(b)(1)(A).)

On January 3, 2020, the People petitioned to renew Angel's commitment.  The trial court conducted a court trial on February 25, 2020.

## B.    The Evidence

### 1.    *The Records*

The prosecution presented 41 pages of partially redacted records from Canyon Springs relating to Angel, and the testimony of Dr. Bess Walsh and Dr. Kory Knapke.[3]  Dr. Walsh's testimony included facts to lay the foundation for the business records exception to the hearsay rule.

The Canyon Springs records included a handwritten log, event assessment forms, restrictive behavioral intervention technique reports, a medication review, emerging risk evaluation

---

[3] The prosecutor redacted the records prior to the trial to obscure portions she determined were inadmissible.

forms (ERNE), progress reports, and an individual program coordinator review.

Angel objected to admission of the records as hearsay. The trial court overruled the objection, concluding the prosecution laid the foundation for their admission under the business records exception.

### 2. *Dr. Walsh's Testimony*

Dr. Walsh, a psychologist at Canyon Springs, began treating Angel in December 2018. She determined that Angel had a developmental disability based on her observations and previous test records indicating he had an I.Q. of 48. She opined that he had three psychiatric diagnoses: generalized anxiety disorder, bipolar disorder, and impulsive disorder. He had a prescription for psychotropic medications including Lithium, Risperdal, and Seroquel.

As to Angel's dangerous behaviors, Dr. Walsh expressed concerns about Angel provoking his peers into altercations. As an example, she referred to a November 30, 2019, handwritten log that documented Angel's comments during a group session that a peer's DVDs had been stolen by the peer's roommate. Staff located the missing DVDs in Angel's room under his blankets. When staff attempted to counsel Angel, he became verbally aggressive, telling staff members, " 'Stupid bitch[.]' 'Man, I fucking hate you.' " He walked out of the room, kicked a desk in the hallway, and threatened staff physically.

Dr. Walsh testified that such incidents "often lead to a misunderstanding and/or altercation with his peers." She believed that this would be dangerous behavior if it occurred in the community because it could be misconstrued, and could result in someone harming Angel.

4

As another example, Dr. Walsh referred to a log entry for November 11, 2019, in which a staff member reported that during a group session, Angel began mumbling under his breath when his peer was talking. Angel refused to stop and continued to mumble, "teasing and provoking his peer until his peer became agitated."

On October 23, 2019, Angel "kept mumbling words towards peer after peer told him to stop, then he [said] to peer to fuck off." Additional log entries dated October 15, October 14, and September 7, 2019, addressed staff's monitoring[4] of Angel to keep him separated from peers to prevent him from provoking physical altercations.

The prosecutor asked Dr. Walsh about the significance of Angel's "non-complian[ce]" as recorded in a log entry on August 18, 2019. The entry reported "[v]erbal aggression and threatening false allegation towards staff. Refused to follow directions. Removing properties from staff area. Calling staff out of names [*sic*] and racial slurs. Highly irritable and non[-]compliant to verbal prompt." Dr. Walsh explained that "[a]t times when [Angel] is upset, he will refuse to follow the Canyon Springs rules and guidelines, including taking care of his personal possessions, following the rules about when things occur, and . . . being in the designated place where he's supposed to be at the time he's supposed to be." She was concerned that "if he's not able to follow the directions at Canyon Springs," she did not have "confidence that he will be able to do it in the

---

[4] Some entries indicate that staff monitored Angel for certain behaviors.

5

community," "including following laws and directives by authority figures."

An August 12, 2019, log entry reported that Angel "was using lots of profanities and instigating peers. Refused to respond to redirection after several prompts. Yelling[, illegible,] and hitting walls with hands and threatened to get staff fired." When asked about this entry, Dr. Walsh testified, "[o]ne of the things that I've observed that [Angel] does when he gets upset is he will make threats to make false allegations against staff [and] against [other] clients. It's a concerning behavior."

In a July 11, 2019, log entry, staff reported that Angel stated "you stole my cigarettes[.] I'm going to fuck you up" to a peer. When the staff attempted to calm him, he responded, "Fuck you[,] fat ass[,] I'll take you out to[o]."

Log entries dated July 5, and July 7, 2019, reported that staff monitored Angel "for physical aggression[,] throwing chairs, cursing at staff[,] threatening to hit staff, slamming doors, teasing peers." Dr. Walsh found these behaviors to be concerning, explaining that "if my client is doing this in the safe confines of our locked facility, I don't feel confident that he wouldn't do that in the community."

Dr. Walsh relayed events recorded in a restrictive behavioral intervention technique report. On April 24, 2019, Angel became upset with his work assignment. He cursed at staff and became threatening, hitting his right hand on the side of the bed. When asked to stop, Angel "jumped up and charged" the staff member, "ramming him into [illegible] . . . and took a fighting stance. He then started swinging with [a] closed fist hitting staff." He was "placed on the wall" and "began pinching staff" and struggling as staff tried to calm him.

Dr. Walsh explained that "in order to keep [Angel] and other peers safe, the staff had to implement hands-on intervention with a physical escort and two wall containments." As these interventions could not be used in the community, she was not confident Angel would be safe if released.

Dr. Walsh opined that Angel was currently a danger to himself and to others due to his lower cognitive functioning. She concluded there was no less restrictive placement option available to Angel.

On cross-examination, she agreed that Angel had other disorders. However, she believed his lower cognitive functioning was the cause of his dangerous behavior because he was "very concrete and can't see the nuances in certain situations," and, as a result, he reacted to events impulsively.

3.    *Dr. Knape's Testimony*

Based upon his clinical interview of Angel and review of medical records, Dr. Knapke[5] concluded that Angel "does suffer from an intellectual disability somewhere in between the mild-to-moderate range."

When Dr. Knapke asked Angel about the April 24, 2019, incident in which he charged at staff, he admitted his behavior was of a threatening nature, but claimed it was self-defense and blamed the staff. Angel "admitted that he, at times, will slam his fists against something whenever he's angry."

---

[5] The court appointed Dr. Knapke as an expert to evaluate Angel's mental status within the meaning of section 6500. Angel stipulated to Dr. Knapke's qualifications as an expert for this purpose.

Dr. Knapke opined that Angel's developmental disability was a substantial cause of his difficulty in controlling his dangerous behavior "[b]ecause his physically threatening behavior appears to be related to not getting his needs immediately met, which is a classic impulse-control problem that . . . intellectually disabled clients experience."

Based on his review of records when Angel was placed in a group community home before he entered Canyon Springs, Dr. Knapke concluded, "he's already demonstrated that he cannot successfully maneuver in a less restrictive setting, like a group home.  When he was in [the group home], . . . [h]e became physically violent, and he continues to demonstrate similar behaviors, even at the developmental center."  Although Dr. Knapke acknowledged that Angel has other diagnoses, "[i]n [his] opinion, the primary pathology in [Angel] is his intellectual disability."  Dr. Knapke opined that Canyon Springs was the least restrictive residential option for Angel.

## C.    The Trial Court's Ruling

The trial court observed that there was no dispute that Angel was developmentally disabled.  Although Angel suffered from other disorders, the court was persuaded that his "intellectual disability limits the ability to control the impulses and the behaviors caused by some of the other diagnoses, and those diagnoses are even treated with medication, and he is still having incidences."  The court found Angel was a danger to himself and to others and there was no alternative to commitment.  The court granted the petition and ordered Angel recommitted to the Department of Developmental Services under section 6500.

Angel timely appealed the February 25, 2020, order.

8

## DISCUSSION

### A. Substantial Evidence Supports the Trial Court's Commitment Order

Angel contends insufficient evidence supported the trial court's finding that his developmental disability was a substantial cause of his difficulty in controlling his dangerous behavior. We are not persuaded.

The standard of review of sufficiency of the evidence claims in civil commitment proceedings is the same as the standard applied to review of criminal convictions. (See *People v. Mercer* (1999) 70 Cal.App.4th 463, 466.) The appellate court reviews " 'the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find' " the necessary elements beyond a reasonable doubt. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

It was undisputed that Angel was developmentally disabled within the meaning of section 6500.

The Canyon Springs records contain numerous entries indicating that Angel was a danger to himself or others. Specifically, objective observations documented in the handwritten logs demonstrate that Angel stated to staff, "screw you," "[s]tupid bitch," "[m]an, I fucking hate you," "[f]uck you fat ass[,] I'll take you out." He told a peer, "you stole my cigarettes[.] I'm going to fuck you up." When a peer asked him to stop mumbling during a group session, he told the peer "to fuck off." He told one of his peers that his roommate had stolen his DVDs when they were actually under Angel's blankets. Dr. Walsh

9

concluded that these behaviors were likely to provoke someone to harm Angel if he acted in a similar manner in the community.

Objective observations in the handwritten logs and in the April 24, 2019, restrictive behavioral intervention technique report reflected physically aggressive behavior by Angel. He kicked a desk and other items in the hallway; hit walls with his hands; and in one particularly volatile incident, he charged at a staff member and hit him with a closed fist. Dr. Walsh opined that these incidents raised a significant concern about the ability to keep Angel safe if he was released to the community. The record thus includes ample evidence of Angel's provocative and physically aggressive behaviors that support the finding that he was a danger to himself or others.

With respect to the element of causation, Dr. Walsh testified that Angel's lower cognitive functioning caused impulsivity, which led him to engage in the behaviors that increased the risk of harm to himself and others. Dr. Knapke opined that Angel's developmental disability was a substantial factor in causing his dangerous behavior because his "physically threatening behavior" resulted from his impulsivity and his inability to cope with interpersonal difficulties and daily stresses. Their opinions are supported by substantial evidence documenting Angel's impulsive and volatile behavior, and are sufficient to permit a reasonable trier of fact to find beyond a reasonable doubt that Angel "has serious difficulty controlling his dangerous behavior because of his" developmental disability. (*People v. Sweeny*, *supra*, 175 Cal.App.4th at p. 216.)

Angel contends that Drs. Walsh and Knapke "failed to adequately address the impact of other conditions apart from developmental disability." In support of this argument, Angel

10

relies on *People v. Cuevas* (2013) 213 Cal.App.4th 94. *Cuevas*, however, is distinguishable. In *Cuevas*, neither the doctor nor the case worker addressed whether the committee's intellectual disability was a substantial factor in his lack of self-control. (*Id.* at p. 107.) Here, in contrast, both Dr. Walsh and Dr. Knapke opined that Angel's dangerous behavior was the result of his developmental disability, not his other disorders.

## B.    Hearsay Challenges

Angel contends the trial court erred in admitting the Canyon Springs records because they contained inadmissible hearsay. He relies on our Supreme Court's opinion in *People v. Sanchez* (2016) 63 Cal.4th 665, which held that an expert cannot "relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Id.* at p. 686.)

### 1.    *Trustworthiness*

Angel challenges admission of the records under the business records exception to the hearsay rule on the ground they are not sufficiently trustworthy. Citing *Palmer v. Hoffman* (1943) 318 U.S. 109 [63 S.Ct. 477, 87 L.Ed. 645], *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305 [129 S.Ct. 2527, 174 L.Ed.2d 314], and *Bullcoming v. New Mexico* (2011) 564 U.S. 647 [131 S.Ct. 2705, 180 L.Ed.2d 610], he argues the records are not routine and comprehensive reflections of the day-to-day operations of Canyon Springs, as required by Evidence Code section 1271.[6] He also contends the records reflect bias because

---

[6] Evidence Code section 1271 provides that "Evidence of a writing made as a record of an act, condition, or event is not

11

the staff member writing the entry was sometimes a participant in the recorded event.

Angel relies on cases holding that documents prepared for litigation purposes are not business records. (See *Bullcoming v. New Mexico*, *supra*, 564 U.S. at p. 664 [addressing a laboratory report prepared for use in a criminal proceeding]; *Melendez-Diaz v. Massachusetts*, *supra*, 557 U.S. at p. 321 [same]; *Palmer v. Hoffman*, *supra*, 318 U.S. at p. 114 [concluding a train engineer's incident report following a grade-crossing accident was not prepared in the regular course of business].) He contends the Canyon Springs records are similar to the records in these cases because Dr. Walsh used them in forming her opinion for the purposes of a section 6500 court proceeding.

We do not agree. Dr. Walsh testified that Canyon Springs is a training and transitional facility for developmentally disabled persons, with the goal of preparing them for reintegration into a community. It "offers programming in terms of addressing deficits in activities of daily living." Essential to such a business is the monitoring of the individual's progress in treatment. For example, certain documents tracked the use and adjustment of Angel's psychotropic medication, which was a prominent factor in his treatment. Other documents tracked his

---

made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

progress on his treatment goals, which relied in part on observations of his behavior.

Angel does not demonstrate that any of the Canyon Springs records was prepared primarily for use in litigation rather than for treatment of its committees. (See *People v. Nelson* (2012) 209 Cal.App.4th 698, 713 [in a mentally disordered offender proceeding under Pen. Code, § 2960, interdisciplinary notes were recorded by hospital staff members for the purposes of discipline and the safety of other patients and staff, and not for use in future litigation].) Nor does he demonstrate that the staff members harbored any bias. As such, the trial court did not abuse its discretion in determining the records were sufficiently trustworthy. (*Conservatorship of S.A.* (2018) 25 Cal.App.5th 438, 447 [a "trial court has wide discretion to determine whether there is a sufficient foundation to qualify evidence as a business record; we will overturn its decision to admit such records only upon a clear showing of abuse"].)

### 2. *Records from Other Facilities*

Angel contends the business records exception did not apply to the testimony by Dr. Walsh that referenced her review of records prepared before Angel was admitted to Canyon Springs. The records themselves were not admitted, and Dr. Walsh did not describe their contents in the course of stating her opinion that they demonstrated Angel's disability caused him to be a danger to himself and others. This was permissible under *Sanchez*, which recognized that "[a]ny expert may still *rely* on hearsay in forming an opinion, and may tell the [the trier of fact] *in general terms* that he did so." (*People v. Sanchez*, *supra*, 63 Cal.4th at p. 685.)

13

### 3. *Records of Acts, Conditions or Events*

Angel challenges the trial court's admission of portions of the handwritten logs and all the ERNEs[7] on the ground they did not qualify as business records because they did not include mere observations of "an act, condition, or event," as required by Evidence Code section 1271.

Specifically, he argues the following statements in the handwritten logs are subjective conclusions: "[v]erbal aggression," "threatening false allegation toward staff," "[h]ighly irritable and non[-]compliant to verbal prompts," "[c]alling staff out of names [*sic*] and racial slurs," "beg[inning] to threaten the staff physically as he walked away," and "attempting to start a problem between his [p]eers."

We need not decide whether these excerpts qualify as observations of acts, conditions, or events. As we explain below, any error in the admission of these portions of the records was harmless.

## C. **Due Process Rights**

Our Supreme Court has observed that section 6500 proceedings are not criminal in nature, and that commitment under this scheme, though involuntary, is not punishment.

---

[7] Dr. Walsh explained that the ERNEs are prepared by a committee's individual program coordinator following a regular meeting with nursing staff, the unit supervisor, the social worker, and the psychologist to discuss emerging risks relating to the committee. To a large extent, the information conveyed in the ERNEs is duplicative of the acts, conditions, and events documented in the handwritten logs and the April 24, 2019, restrictive behavioral intervention technique report. Angel does not challenge admission of the April 24, 2019, report.

(*Cramer v. Tyars* (1979) 23 Cal.3d 131, 137.)  As Angel acknowledges, persons subject to civil commitment do not have a Sixth Amendment right to confront witnesses.  (See *People v. Sweeney*, *supra*, 175 Cal.App.4th at pp. 221-222 [" ' "the confrontation clause does not apply to civil commitment proceedings" ' "].)  The right to confront witnesses, however, does exist in such proceedings under the due process clause.  (*People v. Otto* (2001) 26 Cal.4th 200, 214.)  In civil proceedings " ' " '[d]ue process requires only that the procedure adopted comport with fundamental principles of fairness and decency.  The due process clause of the Fourteenth Amendment does not guarantee to the citizen of a state any particular form or method of procedure.' " [Citation.]' [Citation.]" (*People v. Bona* (2017) 15 Cal.App.5th 511, 520 [discussing mentally disordered offender proceedings under Pen. Code, § 2960].)

We conclude the trial court complied with the due process requirements applicable to civil proceedings by admitting the Canyon Springs records under the business records exception. (See *Conservatorship of S.A.*, *supra*, 25 Cal.App.5th at p. 447 [concluding a ward's due process rights were not violated by admission of her medical and psychiatric records because the records were admissible under the business records exception].) To the extent that portions of the records reflected subjective conclusions by staff members, their admission was harmless.

## D.    The Trial Court's Admission of the Challenged Portions of the Records Was Not Prejudicial

Angel argues that reversal is warranted unless we find that any error in admitting portions of the Canyon Springs records was harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705].)

15

Respondent argues that any error warrants reversal only if it is reasonably probable that a result more favorable to Angel would have occurred in the absence of the error. (See *People v. Watson* (1956) 46 Cal.2d 818, 836; see also *People v. Yates* (2018) 25 Cal.App.5th 474, 487 [on appeal from a civil commitment proceeding under the Sexually Violent Predators Act, evaluating the erroneous admission of case-specific hearsay under the *Watson* standard].) We find the admission of these statements was harmless under either standard.

As explained above, Dr. Walsh's conclusions about Angel's behaviors were based in part on the objective statements in the records documenting his abusive and confrontational language and his physically volatile acts. As experts, Drs. Walsh and Knapke were in a position to characterize Angel's aggressive statements as threats in support of their opinions that Angel was a danger to himself and others. There was no need for them to rely on any subjective impressions by staff members that might have been included in the handwritten logs or ERNEs. The objective facts as recorded by the staff and Dr. Walsh's and Dr. Knapke's own observations of Angel provided a more than adequate basis for their opinions and comprised ample evidence supporting the trial court's ruling.

## DISPOSITION

The trial court's February 25, 2020, order is affirmed.
NOT TO BE PUBLISHED


                                    FEDERMAN, J.*


We concur:


        ROTHSCHILD, P. J.


        BENDIX, J.

---

**\*** Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.